**UNITED STATED DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IVAR AUS, Individually and on Behalf of All Others Similarly Situated,<br><br>                          Plaintiff,<br><br>            vs.<br><br>BAOZUN INC., VINCENT WENBIN QIU, and ROBIN BIN LU,<br><br>                        Defendants. | Civil Action No.<br><br>**COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**<br><br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff Ivar Aus ("Plaintiff"), individually and on behalf of all other persons similarly situated, by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants, alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and upon information and belief as to all other matters based on the investigation conducted by and through Plaintiff's attorneys, which included, among other things, a review of United States ("U.S.") Securities and Exchange Commission ("SEC") filings by Baozun, Inc. ("Baozun" or the "Company"), as well as conference call transcripts and media and analyst reports about the Company.  Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION AND OVERVIEW

1.      This is a federal securities class action on behalf of a class consisting of all persons and entities other than Defendants who purchased or otherwise acquired Baozun securities between March 6, 2019 and November 20, 2019, inclusive (the "Class Period"). Plaintiff seeks to pursue remedies against Baozun and certain of its most senior executives under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), and Rule l0b-5 promulgated thereunder.

2.      Baozun provides brand e-commerce services to brand partners in the People's Republic of China ("China").  The Company offers end-to-end e-commerce services, including information technology ("IT") infrastructure setup and integration, sale of apparel, home and electronic products, online store design and setup, visual merchandising and marketing, online store operations, customer services, warehousing, and order fulfillment, which helps companies sell their branded goods online.

3.      Huawei Technologies Co., Ltd. ("Huawei") is a Shenzhen, Chinese-based multinational technology company that provides telecommunications equipment and sells consumer electronics, including smartphones.

4.      Unbeknownst to investors, Huawei was one of Baozun's largest brand partners, on a historical basis.  Huawei paid more add-on fees for the work Baozun did for it, increasing the revenues Baozun received for Huawei work compared to the Company's other brand partners.  This caused Baozun to report outsized revenue growth during the first half of 2019, which would be abruptly cut off during the second half 2019, after Baozun restructured the relationship as Huawei took much of its online merchandizing in-house.

5.      As a result, the market was shocked on November 21, 2019 when Baozun announced third quarter ("3Q19") financial results that came in lower than the market had been led to expect and provided dismal fourth quarter 2019 ("4Q19") financial guidance, blaming, in large part, the adverse "impact from terminating our service agreement with one electronics brand."  Though Baozun did not disclose who that large "electronics brand" was, many in the financial media have suggested that it was Huawei.

6.      On this news, the price of Boazun American Depository Receipts ("ADRs") fell $7.60 per share, or 17.47%, to close at $35.90 per share on November 21, 2019, on unusually high trading volume of more than 8 million shares trading, more than eight times the average daily volume over the preceding ten trading days.

7.      Meanwhile, with the market price of Baozun ADRs artificially inflated, Baozun cashed in, selling at least 2.25 million ADRs in a registered public stock offering at $40.00 each on or about April 10, 2019 (the "ADR Offering"), raising $90 million through underwriters Credit Suisse Securities (USA) LLC and Deutsche Bank Securities Inc. (the "Underwriters"),

and "loaning" to be sold by those same Underwriters another 1.98 million ADRs.  That same day, Baozun also closed a concurrent offering of $225 million in aggregate principal amount of convertible senior notes due 2024 (the "Notes"), and the sale of an additional $50 million in aggregate principal amount of the Notes pursuant to the exercise by the initial purchasers in full of an option to purchase additional Notes, pursuant to Rule 144A and Regulation S under the Securities Act of 1933, as amended (collectively, the "Notes Offering"), receiving net proceeds from the Notes Offering of approximately $269 million.

## JURISDICTION AND VENUE

8.      Jurisdiction is conferred by Section 27 of the Exchange Act.  The claims asserted herein arise under Section 10(b) and 20(a) of the Exchange Act and Rule 10b-5 promulgated thereunder.  This Court has jurisdiction over the subject matter of this action under 28 U.S.C. § 1331 and Section 27 of the Exchange Act.

9.      Venue is proper in this District pursuant to Section 27 of the Exchange Act and 28 U.S.C. § 1391(b) as many of the false and misleading statements alleged herein were disseminated in or from this District.  Baozun ADRs trade on the Nasdaq Stock Market ("NASDAQ"), located in this District, and the Company's agents for service of process in the U.S. are Law Debenture Corporate Services Inc., 801 2nd Avenue, Suite 403, New York, NY 10017 and Cogency Global Inc., 10 East 40th Street, 10th Floor, New York, New York 10016.

10.      In connection with the acts alleged in this Complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the mails, interstate telephone communications and the facilities of the national securities markets.

## PARTIES

11.     Plaintiff, as set forth in the accompanying Certification, incorporated by reference herein, purchased Baozun securities during the Class Period and has been damaged thereby.

12.     Defendant Baozun is a Shanghai, China-based e-commerce company.  Baozun shares are listed and trade only in the U.S. in form of ADRs, each of which represents three Class A Baozun ordinary shares.  As of September 30, 2019, there were 174 million shares of Baozun Class A ordinary shares issued and outstanding, which shares trade as ADRs in an efficient market on the NASDAQ under the ticker symbol "BZUN."  The Company also had 13.3 million shares of Class B ordinary shares issued and outstanding, which are not listed to trade.

13.     Defendant Vincent Wenbin Qiu ("Qiu") has served as Baozun's Chief Executive Officer and the Chairman of its Board of Directors at all relevant times.

14.     Defendant Robin Bin Lu ("Lu") has served as Baozun's Chief Financial Officer at all relevant times.

15.     Defendants Qiu and Lu are referred to herein as the "Individual Defendants."

16.     Defendant Baozun and the Individual Defendants are collectively referred to herein as "Defendants."

## SUBSTANTIVE ALLEGATIONS

### Background

17.     Baozun characterizes itself as "the leading brand E-commerce service partner in China."  The Company says that it helps brands execute their ecommerce strategies in China by selling their goods directly to consumers online or by providing services to assist with their ecommerce operations.  The Company provides IT solutions, store operations, digital marketing, customer services, warehousing, and fulfillment.

4

18.    As of December 31, 2018, Baozun reported having 185 brand partners for which it provided ecommerce services.  Those brands included apparel and accessories, appliances, electronics, home and furnishings, food and health products, beauty and cosmetics, fast moving consumer goods and mother and baby, and insurance and automobiles.

19.    Baozun generates revenues from two streams—product sales and services.  The Company derives product sales revenues primarily through selling products on behalf of brand partners to consumers under the distribution model.  The Company derives services revenues primarily through charging brand partners and other customers fees under the consignment model and the service fee model.  For services provided under the consignment model and service fee model, the Company charges fixed fees and/or variable fees primarily based on the customer's Gross Merchandise Volume ("GMV") or other variable factors such as number of orders fulfilled.

20.    Baozun reported GMV of RMB11,264.8 million, RMB19,112.2 million, and RMB29,426.0 million in 2016, 2017, and 2018, respectively.  The Company reported total net revenues of RMB3,390.3 million, RMB4,148.8 million, and RMB5,393.0 million in 2016, 2017, and 2018, respectively.  For the same periods, Baozun reported that its net revenues from product sales were growing, accounting for 64.2%, 54.4%, and 46.7%, respectively, of its total net revenues.  Baozun reported net income of RMB85.4 million, RMB209.1 million, and RMB269.8 million in 2016, 2017, and 2018, respectively.

21.    Online retail sales in China experience two big annual sales promotional days— "Singles Day" and June 18th.  "Singles Day," or Guanggun Jie, is a shopping holiday popular among young Chinese people that celebrate their pride in being single.  The holiday was created by online retailer behemoth Alibaba.com, and has become the largest offline and online shopping

5

day in the world.  Online retailers also promote large sales on June 18th, which is nominally the anniversary date of JD.com, another online purveyor based in China.  Just as they adopted Singles Day from Alibaba.com, large Chinese online purveyors now promote large June 18th sales as well, with some referring to it as their summer sales.

### Materially False and Misleading Statements Issued During the Class Period

22.    The Class Period begins on March 6, 2019, when Baozun issued a press release announcing its fourth quarter and fiscal year 2018 ("4Q18" and "FY18") financial results for the period ended December 31, 2018, as well as providing its first quarter 2019 ("1Q19") financial guidance.  The press release highlighted that the "Number of brand partners increased to 185 as of December 31, 2018, from 152 as of December 31, 2017," and that the "Number of GMV brand partners increased to 178 as of December 31, 2018, from 146 as of December 31, 2017." The releases also quoted the Individual Defendants, stating, in relevant part, as follows:

> "We closed out the year strongly with solid financial and operational results driven primarily by strong growth from existing online stores, improved efficiency as a result of the application of innovative proprietary technologies and tools, and growth in our digital marketing services," commented Mr. Vincent Qiu, Chairman and Chief Executive Officer of Baozun. "Despite some uncertainties in macroeconomic, I am confident in our ability to develop new technologies and apply them to our expanding portfolio of omni-channel services which will create more value for our brand partners and drive future sustainable growth. *We continue to see the number of new brand partners coming on board accelerating* and we are confident that our investments in strengthening our long-term technological competitive advantage will further reinforce our market leading position in China's brand e-commerce market."

> Mr. Robin Lu, Chief Financial Officer of Baozun commented, "We are pleased to deliver another strong quarter of growth with GMV increasing by 42.8% year-over-year. Total net revenue also increased significantly, growing by 40.7% year-over-year. Investments in technological innovation and productization during the quarter were RMB21.0 million, which we believe will enable us to expand our addressable market and strengthen our long-term competitiveness. *We remain confident in our strategy and the effectiveness of our operations and services, and expect GMV to grow by 40% to 50% year-over-year and total net revenues to increase to over RMB7.2 billion during fiscal year 2019. For the first quarter of 2019, we expect GMV to grow by 55% to 60% year-over-year.*"

6

(Emphases added.)

23.     As to "Business Outlook," the March 6th press release stated that "[b]ased on current macroeconomic and operating conditions, for the first quarter of 2019, the Company expects total net revenues to be between RMB1.25 billion and RMB1.30 billion, with services revenue to increase by over 45% on a year-over-year basis."

24.     That same day, Baozun conducted a conference call with investors and stock analysts, providing more positive commentary about the Company's purportedly strong then-present business metrics and financial prospects.

25.     On April 3, 2019, Baozun filed its 2018 Annual Report with the SEC on Form 20-F (the "2018 20-F"), which was signed by Defendant Lu and certified pursuant to the Sarbanes-Oxley Act of 2002 by the Individual Defendants.  As to the Company's brand partnerships, the 2018 20-F stated, in relevant part, as follows:

**Brand Partners & Brand Partner Development and Services**

*Brand Partners*

As of December 31, 2018, we provided E-commerce solutions to 185 brand partners primarily under annual or tri-annual service contracts. Our brand partners cover diverse product categories, including: apparel and accessories; appliances; electronics; home and furnishings; food and health products; beauty and cosmetics; fast moving consumer goods and mother and baby; and insurance and automobiles. Some of our existing brand partners have had years of cooperation with us and we generated a significant portion of our net revenue through (i) the sale of products in the stores of these brands operated by us and (ii) provision of our services to these brand partners . . . .

*Brand Partner Development and Services*

Brand Partner Screening and Acquisition

We have implemented a strict and methodical brand selection process. ***Based on our screening guidelines, we carefully select prospective brand partners, choosing to work only with those that are established in profitable industries and product categories and with long-term potential. In addition, we screen potential brand partners based on criteria such as projected annual GMV and service fees,***

*projected profitability and proposed duration of cooperation.* We also conduct due diligence reviews on our prospective brand partners' qualifications, including whether they hold the proper business operation licenses and safety, sanitary and quality certifications, and trademark registration certificates and license agreements in relation to the branded products.

*We strategically focus on brand partners in product categories that we believe will help optimize our revenue mix and improve our profitability*. We intend to grow our business by adding new brand partners into our brand partner portfolio. We seek to attract new brand partners by providing solutions that enable them to grow their E-commerce business more rapidly and cost-effectively than they could on their own. We have been able to use the capabilities we have developed for our existing brand partners to attract new brand partners. We also intend to attract customers with our high-quality digital marketing services and technology services, and convert such customers into our brand partners.

(Emphases added.)

26.     With respect to any then-known trends or uncertainties that could potentially adversely impact Baozun's future financial prospects, the 2018 20-F stated, in relevant part, as follows:

**D.     Trend Information**

Other than as disclosed elsewhere in this annual report, *we are not aware of any trends, uncertainties, demands, commitments or events for the period from January 1, 2018 to December 31, 2018 that are reasonably likely to have a material effect on our net revenues, income, profitability, liquidity or capital resources, or that would cause the disclosed financial information to be not necessarily indicative of future operating results or financial conditions*.

(Emphasis added.)

27.     On April 3, 2019, Baozun also published its "2018 Chairman Letter" that alluded to the possible restructuring of certain brand partner relationships, without disclosing that it was the Company's relationship with Huawei that was being restructured, what Huawei's historical strong contribution to its service fees had been, or that the restructuring was being done because Huawei was moving its online merchandizing in-house.  Rather, the letter represented that the Company was merely pro-actively optimizing its own portfolio by emphasizing higher quality

GMV partners going forward.  Specifically, the 2018 Chairman Letter stated, in relevant part, as follows:

> **Key Strategies for 2019**
>
> Our proven success and reputation have attracted many brands to come to us. With our improved operating efficiencies, we now have the capacity to serve more of these brands. I'm excited to say that our pipeline has never been stronger, and ***we will proactively extend our brand portfolio to achieve more balanced and sustainable growth***. To execute our growth strategy, we reorganized our business structure during the first quarter of 2019 to add focus on e-commerce, supply chain logistics, and technology innovation:
>
> **E-commerce group: A reorganized structure and precision segmentation**
>
> We reorganized our business structure to focus on apparel, cosmetics, FMCG, and mother and baby categories, which we believe have strong growth potential going forward.
>
> ***In the future, we will emphasize the quality of our GMV by selecting brand categories with higher margin contributions to further strengthen our position as a market leader***.

(Emphases added.)

28.    After pricing the ADR Offering and the Notes Offering on April 5, 2019, on April 10, 2019, Baozun announced that, through the Underwriters, it had sold at least 2.25 million ADRs in the registered ADR Offering at $40.00 each, raising $90 million, and had loaned to them another 1.98 million ADRs to sell.  That same day, Baozun also closed the Notes Offering, receiving net proceeds of approximately $269 million.  The Registration Statement used to conduct the ADR Offering, which was signed by the Individual Defendants, incorporated by reference the Company's materially false and misleading 2018 20-F.

29.    On May 29, 2019, Baozun issued a press release announcing its 1Q19 financial results for the interim period ended March 31, 2019, and provided its second quarter 2019 ("2Q19") financial guidance.  The release highlighted that the "Number of brand partners increased to 200 as of March 31, 2019, from 156 as of March 31, 2018," and that the "Number of

GMV brand partners increased to 192 as of March 31, 2019, from 150 as of March 31, 2018."

The release also quoted the Individual Defendants, who stated, in relevant part, as follows:

> "I'm pleased to announce a strong start to the year where our investments in developing innovative and disruptive technology are paving the way for us to lead the industry into the next phase of the e-commerce revolution," commented Mr. Vincent Qiu, Chairman and Chief Executive Officer of Baozun. "One of our strategic goals this year is to focus on high-quality growth ***as we begin to benefit from the additional capacity and expanded addressable market, that our powerful tools and highly-targeted digital marketing solutions are creating. We continue to grow our business in a sustainable and balanced manner, which we believe will better position us to drive growth over the long-term*** and offer both international and domestic brand partners a unique value proposition."

> Mr. Robin Lu, Chief Financial Officer of Baozun commented, "We delivered another solid quarter with GMV increasing by 58.4% and revenue growing by 39.7% year-over-year. Notably, new brand partners, especially brands in high-quality GMV categories, delivered incremental contribution in GMV growth. Furthermore, we are delighted to see some early-stage operational efficiency improvement generated from our system intelligence and automation, which underscores our commitment to innovations. During the first quarter of 2019, our investments in technology innovation and productization totaled RMB23 million. ***We are confident with our growth prospects and expect GMV to grow by 50% to 55% year-over-year for the second quarter of 2019.***"

(Emphases added.)

30.     After postponing it on May 29, 2019, Baozun conducted a conference call with investors and analysts on May 30, 2019, providing more positive commentary about the Company's purportedly strong then-present business metrics and financial prospects.

31.     On August 21, 2019, Baozun issued a press release announcing its 2Q19 financial results for the interim period ended June 30, 2019, and provided 3Q19 financial guidance.  The release highlighted that the "Number of brand partners increased to 212 as of June 30, 2019, from 162 as of June 30, 2018," and that the "Number of GMV brand partners increased to 202 as of June 30, 2019, from 156 as of June 30, 2018."  The release also quoted the Individual Defendants, stating, in relevant part, as follows:

"Driven by a robust June 18 sales campaign, our GMV continued to gain growth momentum during the quarter while ***total revenue grew at its fastest pace over the past three years***," commented Mr. Vincent Qiu, Chairman and Chief Executive Officer of Baozun. "Our GMV growth rate during the quarter outpaced many e-commerce marketplaces ***demonstrating just how effective our stellar tools are and the unique value proposition we offer to both international and domestic brand partners***. In addition, we deepened cooperation with China's largest e-commerce marketplace to enhance the shopping experience and increase user engagement on their dedicated channel for premium and luxury goods. This will allow us to further penetrate into and benefit from the enormous growth potential in this category. Our focus this year remains on leveraging the additional capacity our technology and tools are creating to benefit from an expanding addressable market and generate high-quality growth."

Mr. Robin Lu, Chief Financial Officer of Baozun commented, "Our top line exceeded guidance during the quarter, with total revenue growing by 47% year-over-year while GMV increased by nearly 60%. In addition, we are glad to see incremental contribution to GMV from more newly-acquired brands. We generated over RMB100 million in non-GAAP income from operations for the first time during a non-Singles Day quarter, a significant milestone for us. During the second quarter of 2019, our investments in technology innovation and productization totaled RMB21.1 million. So far in the third quarter, we are accelerating the ramp up of operations for newly-acquired brands and are reinvesting some of our sustained profits to capture selected emerging opportunities. ***We are confident in our growth prospects, and expect GMV to grow by 40% to 45% year-over-year for the third quarter of 2019. We also reiterate our outlook where we expect GMV to grow by 40% to 50% year-over-year during fiscal year 2019.***"

(Emphases added.)

32.     As to "Business Outlook," the August 21st press release stated that "[t]he Company expect[ed] total net revenues to be between RMB1,500 million and RMB1,550 million for the third quarter of 2019, which represents a year-over-year growth rate of 35% to 40%, in which services revenue to increase in line with growth rate of total net revenue on a year-over-year basis."

33.     The statements referenced above in ¶¶ 22-32 were materially false and misleading when made because they failed to disclose the following adverse facts which were known to Defendants or recklessly disregarded by them as follows: (i) that Baozun was heavily reliant upon a single brand partner, Huawei, for the exponential service fee growth it had been reporting

historically, which was in turn fueling its historical revenue growth; (ii) that compared to Baozun's other brand partners, the Huawei work had historically included a lot of additional add-on service fees, increasing the revenue reported from Huawei vis-a-via its other brand partners; (iii) that Huawei, like other large brands, was actively preparing to bring its online merchandising in-house, meaning Baozun knew that it was losing a significant brand partner; and (iv) that, as a result of the foregoing, Baozun was not on track to achieve the financial results and performance Defendants claimed the Company was on track to achieve during the Class Period.

### The Truth Begins to Emerge

34.     Later on August 21, 2019, Baozun conducted a conference call with investors and analysts, providing more positive commentary about the Company's purportedly strong then-present business metrics and financial prospects.  During the conference call, Defendant Qiu alluded to some ongoing restructuring of the Company's relationship with an unnamed "electronics" brand partner, without disclosing that it was Huawei, what Huawei's historical contribution to its service fees had been, or that the "restructuring" was being done because Huawei was moving its online merchandizing in-house.  Rather, Defendant Qiu represented that the Company was merely pro-actively "optimizing" its own portfolio "toward high quality GMV."  Specifically, Defendant Qiu stated, in pertinent part as follows:

> In addition to bringing new brands on board, we have also been working identify ways to optimize our existing portfolio mix by evaluating the current brand both quantitatively and qualitatively when it comes to GMV. After thorough consideration and *part of our strategy for focus on high quality GMV*, we may strategically convert one of our electronics GMV brand partner into a known GMV partner during the third quarter. Instead of handling their store operations, we provide IT and a marketing solutions to continue our support for this brand. We believe *optimizing our brand portfolio toward high quality GMV* would ensure the effective and efficient usage of our resources, so we can capture additional market opportunities to drive future growth.

(Emphases added.)

35.     Defendant Lu also commented on the anticipated financial impact of the ongoing restructuring of the relationship with the unnamed "electronics brand," stating, in relevant part, as follows:

> Well, we expect GMV to grow by 40% to 45% year-over-year for the third quarter of 2019. And the way we integrate our full-year GMV growth outlook of 40% to 50%. Today's note, this growth outlook has embedded the impact on GMV from the transitioning of electronics brand into potentially are now GMV partners. With our profitability improving, addressable market expanding and the strong cash position, we have decided to strategically reinvest some of our profits throughout the rest of the year to take advantage of the newly emerging opportunities. So that we will strengthen our position over long term. These opportunities include early investments in some key new brands to support operations but they gradually ramp up.

36.     On this news, despite that Baozun had not specifically disclosed that it was restructuring its relationship with Huawei, what Huawei's historical strong contribution to its service fees had been, or that the restructuring was being done because Huawei was moving its online merchandizing in-house—and that, rather, Defendants had claimed Baozun was merely pro-actively optimizing its own portfolio by emphasizing higher quality GMV partners going forward—the price of Baozun ADRs fell $6.31 per share below a close of $50.08 per share on August 20, 2019, to close at $43.77 per share on August 21, 2019, on unusually high trading volume of more than 7.8 million shares trading, or more than six times the average daily volume over the prior ten trading days.

37.     On November 11, 2019, Baozun issued a press release announcing its 2019 Singles Day sales results.  Baozun's release emphasized that "***Baozun Sets New Total Order Value Record of RMB10.06 Billion on Singles Day 2019***," stating, in relevant part, as follows:

> Baozun . . . the leading brand e-commerce service partner that helps brands execute their e-commerce strategies in China, today announced that the total order value settled through payment gateways on all of the Company's e-commerce

channels reached a record RMB10.06 billion on Singles Day 2019, an increase of 53.6% from last year's previous high of RMB6.55 billion.

\* \* \*

"I am pleased to see that our focused strategy and execution in preparing for the massive surge in orders generated new corporate records, with total order value increasing 53.6% to RMB10.06 billion and number of orders surging 61% to 29 million orders," commented Mr. Vincent Qiu, Chief Executive Officer of Baozun. "Breaking through the RMB10 billion mark in order value this year reflects the enormous future growth potential our core business continues to generate. We are excited to see that many leading brands within our portfolio ranked first in terms of total order value within their respective verticals. The combination of our cutting-edge IT infrastructure, integrated marketing capabilities, extensive analysis of big data, sophisticated warehousing and logistics networks, and deep insight into consumers helped brands engage with consumers more effectively and are all essential elements powering our success. As we continue to drive innovation to support future growth, I am confident that our investments in technology will help us solidify our position as the market leading e-commerce service provider."

38.     That day, Baozun also disclosed that it had lost an unnamed electronics brand partner, as well as the moderate adverse impact of that loss on total order value for Singles Day 2019.  However, because the Company never quantified its significant reliance on Huawei for service fees, concealed that it was Huawei that the Company had lost as a service customer, and concealed the loss's material adverse impact on the Company's financial prospects, the investment community was still uninformed as to the true extent of that loss's negative impact on Baozun's business metrics and financial prospects.  All Baozun stated that day was that: "[t]he record Singles Day total order value does not include the contribution from *one electronics brand that Baozun stopped servicing during the third quarter of 2019 as part of its strategy to optimize its brand portfolio towards higher-quality growth*," and that "[t]o provide a more accurate comparison, if the contribution from the electronics brand was excluded from 2018, the total order value for Singles Day 2019 would have increased by approximately 76% year-over-year," rather than the 53.6% increase in total order value for Singles Day 2019 reported that day.

39.     The statements referenced above in 34-38 were materially false and misleading when made because they failed to disclose the following adverse facts which were known to Defendants or recklessly disregarded by them as follows: (i) that Baozun was heavily reliant upon a single brand partner, Huawei, for the exponential service fee growth it had been reporting historically, which was in turn fueling its historical revenue growth; (ii) that compared to Baozun's other brand partners, the Huawei work had historically included a lot of additional add-on service fees, increasing the revenue reported from Huawei vis-a-via its other brand partners; (iii) that Huawei, like other large brands, was actively preparing to bring its online merchandising in-house, meaning Baozun knew that it was losing a significant brand partner; and (iv) that, as a result of the foregoing, Baozun was not on track to achieve the financial results and performance Defendants claimed the Company was on track to achieve during the Class Period.

## The Truth Fully Emerges

40.     On November 21, 2019, during pre-market hours, Baozun announced its 3Q19 financial results for the interim period ended September 30, 2019, and provided its 4Q19 financial guidance.  Rather than the revenues of $214 million Baozun had led the investment community to expect, the Company reported revenues of just $210.3 million.  Additionally, earnings per ADR of $0.14 were below the $0.15 per ADR the investment community had been led to expect.  More critically, Baozun disclosed the electronics customer loss would negatively impact results for the rest of 2019 and for the first half of 2020, stating that for 4Q19 it now only expected revenues in the range of $384 million to $391.2 million, well below the $401 million the Company had led the investment community to expect based on its prior bullish Class Period statements.  The press release quoted Defendant Qiu, who blamed the adverse impact on "terminating our service agreement with one electronics brand and a challenging macroeconomic

15

environment." Defendant Lu admitted that the discontinuation of the collaboration with the "large electronics brand" (*i.e.*, Huawei) would negatively impact financial results for the first half of 2020, stating, in relevant part, that "it will take a few quarters for the incremental GMV growth to reflect in our revenue and the bottom line growth as our services take hold and scale up." Notably, although Baozun's 3Q19 GMV grew 43%, its revenues only grew 35% over the same period without Huawei—meaning that although a lot of merchandise was being sold through its systems, the Company was earning far less service fees on those sales.

41.     On this news, the price of Boazun ADRs fell $7.60 per share, or 17.47%, to close at $35.90 per share on November 21, 2019, on unusually high trading volume of more than 8 million shares trading, more than eight times the average daily volume over the preceding ten trading days.

42.     The market for Baozun ADRs was open, well-developed and efficient at all relevant times. As a result of these materially false and misleading statements and omissions as set forth above, Baozun ADRs traded at artificially inflated prices during the Class Period. Plaintiff and other members of the Class purchased or otherwise acquired Baozun ADRs relying upon the integrity of the market price of Baozun ADRs and market information relating to Baozun, and have been damaged thereby.

43.     During the Class Period, Defendants materially misled the investing public, thereby inflating the price of Baozun ADRs, by publicly issuing false and misleading statements and omitting to disclose material facts necessary to make Defendants' statements, as set forth herein, not false and misleading. Said statements and omissions were materially false and misleading in that they failed to disclose material adverse information and misrepresented the truth about the Company, its business, and operations, as alleged herein.

44.     At all relevant times, the material misrepresentations and omissions particularized in this Complaint directly or proximately caused, or were a substantial contributing cause, of the damages sustained by Plaintiff and other members of the Class.  As described herein, during the Class Period, Defendants made or caused to be made a series of materially false or misleading statements about Baozun's business, prospects, and operations.  These material misstatements and omissions had the cause and effect of creating, in the market, an unrealistically positive assessment of Baozun and its business, prospects, and operations, thus causing the Company's ADRs to be overvalued and artificially inflated at all relevant times.  Defendants' materially false and misleading statements during the Class Period resulted in Plaintiff and other members of the Class purchasing Baozun ADRs at artificially inflated prices, thus causing the damages complained of herein.  When the true facts about the Company were revealed to the market, the inflation in the price of Baozun ADRs was removed and the price of Baozun ADRs declined dramatically, causing losses to Plaintiff and the other members of the Class.

## ADDITIONAL SCIENTER ALLEGATIONS

45.     As alleged herein, Baozun and the Individual Defendants acted with scienter in that they knew that the public documents and statements issued or disseminated in the name of the Company were materially false and misleading, knew that such statements or documents would be issued or disseminated to the investing public, and knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the federal securities laws. As set forth herein in detail, these Defendants, by virtue of their receipt of information reflecting the true facts regarding Baozun, their control over, and/or receipt and/or modification of Baozun's allegedly materially misleading statements and/or their associations with the Company which made them privy to confidential proprietary information concerning Baozun, participated in the fraudulent scheme alleged herein.

46.     With the price of Baozun securities artificially inflated on their false but positive statements, Defendants cashed in, selling at least $90 million of ADRs and $269 million of Notes at fraud-inflated prices in the April 10, 2019 combined ADR and Note Offerings.

## NO SAFE HARBOR

47.     The "Safe Harbor" warnings accompanying Baozun's reportedly forward-looking statements ("FLS") issued during the Class Period were ineffective to shield those statements from liability.   To the extent that projected revenues and earnings were included in the Company's financial reports prepared in accordance with GAAP, including those filed with the SEC on Form 8K, they are excluded from the protection of the statutory Safe Harbor. *See* 15 U.S.C. § 78u-5(b)(2)(A).

48.     Defendants are also liable for any false or misleading FLS pleaded because, at the time each FLS was made, the speaker knew the FLS was false or misleading and the FLS was authorized and/or approved by an executive officer of Baozun who knew that the FLS was false. None of the historic or present tense statements made by Defendants were assumptions underlying or relating to any plan, projection or statement of future economic performance, as they were not stated to be such assumptions underlying or relating to any projection or statement of future economic performance when made, nor were any of the projections or forecasts made by Defendants expressly related to, or stated to be dependent on, those historic or present tense statements when made.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

49.     Plaintiff brings this action as a class action pursuant to Federal Rules of Civil Procedure 23(a) and (b)(3) on behalf of a class consisting of all persons and entities other than Defendants who purchased or otherwise acquired Baozun securities during the Class Period (the "Class").  Excluded from the Class are Defendants, the officers and directors of the Company, at

all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

50.     The members of the Class are so numerous that joinder of all members is impracticable.   Throughout the Class Period, Baozun securities were actively traded on the NASDAQ.   While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff believes that there are hundreds of thousands of members in the proposed Class.   Record owners and other members of the Class may be identified from records maintained by Baozun and/or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

51.     Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

52.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.

53.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.   Among the questions of law and fact common to the Class are:

        a)      Whether the Exchange Act was violated by Defendants as alleged herein;

        b)      Whether statements made by Defendants misrepresented material facts about the business, operations and prospects of Baozun; and

        c)      To what extent the members of the Class have sustained damages and the proper measure of damages.

54.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

## APPLICATION OF PRESUMPTION OF RELIANCE: ## FRAUD ON THE MARKET

55.     Plaintiff will rely upon the presumption of reliance established by the fraud on the market doctrine in that, among other things:

a)     Defendants made public misrepresentations or failed to disclose material facts during the Class Period;

b)     The omissions and misrepresentations were material;

c)     Baozun securities traded in an efficient market;

d)     The misrepresentations alleged would tend to induce a reasonable investor to misjudge the value of Baozun securities; and

e)     Plaintiff and other members of the Class purchased Baozun securities between the time Defendants misrepresented or failed to disclose material facts and the time the true facts were disclosed, without knowledge of the misrepresented or omitted facts.

56.     At all relevant times, the market for Baozun securities was efficient for the following reasons, among others:

a)     As a regulated issuer, Baozun filed periodic public reports with the SEC; and

b)      Baozun regularly communicated with public investors via established market communication mechanisms, including through regular disseminations of press releases on the major news wire services and through other wide-ranging public disclosures, such as communications with the financial press, securities analysts, and other similar reporting services.

## LOSS CAUSATION/ECONOMIC LOSS

57.      During the Class Period, as detailed herein, Defendants made false and misleading statements and engaged in a scheme to deceive the market and a course of conduct that artificially inflated the price of Baozun securities and operated as a fraud or deceit on Class Period purchasers of Baozun securities by misrepresenting the value of the Company's business and prospects.  As Defendants' misrepresentations and fraudulent conduct became apparent to the market, the price of Baozun securities fell precipitously, as the prior artificial inflation came out of the price.  As a result of their purchases of Baozun securities during the Class Period, Plaintiff and other members of the Class suffered economic loss, *i.e.*, damages, under the federal securities laws.

## COUNT I

### (Violations of Section 10(b) of the Exchange Act and Rule 10b-5 Promulgated Thereunder Against All Defendants)

58.      Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

59.      During the Class Period, Defendants disseminated or approved the false statements specified above, which they knew or deliberately disregarded were misleading in that they contained misrepresentations and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

60.     Defendants violated Section 10(b) of the Exchange Act and Rule 10b-5 in that they: (a) employed devices, schemes and artifices to defraud; (b) made untrue statements of material facts or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or (c) engaged in acts, practices and a course of business that operated as a fraud or deceit upon Plaintiff and others similarly situated in connection with their purchases of Baozun securities during the Class Period.

61.     Plaintiff and the Class have suffered damages in that, in reliance on the integrity of the market, they paid artificially inflated prices for Baozun securities.  Plaintiff and the Class would not have purchased Baozun securities at the prices they paid, or at all, if they had been aware that the market prices had been artificially and falsely inflated by Defendants' misleading statements.

## COUNT II

**(Violations of Section 20(a) of the Exchange Act Against the Individual Defendants)**

62.     Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

63.     The Individual Defendants acted as controlling persons of Baozun within the meaning of Section 20(a) of the Exchange Act.  By reason of their positions with the Company, and their ownership of Baozun securities, the Individual Defendants had the power and authority to cause Baozun to engage in the wrongful conduct complained of herein.  By reason of such conduct, Defendants are liable pursuant to Section 20(a) of the Exchange Act.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for relief and judgment, as follows:

A.      Determining that this action is a proper class action, designating Plaintiff as Lead Plaintiff and certifying Plaintiff as a Class representative under Rule 23 of the Federal Rules of Civil Procedure and Plaintiff's counsel as Lead Counsel;

B.      Awarding compensatory damages in favor of Plaintiff and the other Class members against all Defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

C.      Awarding Plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

D.      Awarding such equitable/injunctive or other relief as deemed appropriate by the Court.

## DEMAND FOR TRIAL BY JURY

Plaintiff hereby demands a trial by jury.

DATED:  December 26, 2019

Respectfully submitted,

**POMERANTZ LLP**

*/s/ Jeremy A. Lieberman*
Jeremy A. Lieberman
J. Alexander Hood II
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone: (212) 661-1100
Facsimile: (212) 661-8665
Email: jalieberman@pomlaw.com
Email: ahood@pomlaw.com

**POMERANTZ LLP**
Patrick V. Dahlstrom
10 South La Salle Street, Suite 3505
Chicago, Illinois 60603

Telephone: (312) 377-1181
Facsimile: (312) 377-1184
Email: pdahlstrom@pomlaw.com

**BRONSTEIN, GEWIRTZ**
**& GROSSMAN, LLC**
Peretz Bronstein
60 East 42nd Street, Suite 4600
New York, NY 10165
Telephone: (212) 697-6484
Facsimile: (212) 697-7296
Email: peretz@bgandg.com

*Attorneys for Plaintiff*

24

**Submission Date**

2019-12-11 15:12:39

# CERTIFICATION PURSUANT TO FEDERAL SECURITIES LAWS

1.   I  make this declaration pursuant to Section 27(a)(2) of the Securities Act of 1933 ("Securities Act") and/or Section 21D(a)(2) of the Securities Exchange Act of 1934 ("Exchange Act") as amended by the Private Securities Litigation Reform Act of 1995.

2.  I have reviewed a Complaint against Baozun Inc. ("Baozun" or the "Company") and authorize the filing of a comparable complaint on my behalf.

3.  I did not purchase or acquire Baozun securities at the direction of plaintiffs' counsel or in order to participate in any private action arising under the Securities Act or Exchange Act.

4.   I am willing to serve as a representative party on behalf of a Class of investors who purchased or acquired Baozun securities during the class period, including providing testimony at deposition and trial, if necessary.  I understand that the Court has the authority to select the most adequate lead plaintiff in this action.

5.  To the best of my current knowledge, the attached sheet lists all of my transactions in Baozun securities during the Class Period as specified in the Complaint.

6.   During the three-year period preceding the date on which this Certification is signed, I have not sought to serve as a representative party on behalf of a class under the federal securities laws.

7.   I agree not to accept any payment for serving as a representative party on behalf of the class as set forth in the Complaint, beyond my pro rata share of any recovery, except such reasonable costs and expenses directly relating to the representation of the class as ordered or approved by the Court.

8.   I declare under penalty of perjury that the foregoing is true and correct.

## Name

**Print Name**

Ivar Aus

**Signature**



**Full Name**

Ivar Aus

(redacted)

**Baozun, Inc. (BZUN)**                                                      **Aus, Ivar**

### List of Purchases and Sales

| Date | Purchase or Sale | Number of Shares/Unit | Price Per Share/Unit |
|------|------------------|-----------------------|----------------------|
| 7/16/2019 | Purchase | 75 | $54.0600 |
| 7/26/2019 | Purchase | 50 | $50.4900 |
| 8/22/2019 | Purchase | 230 | $42.2800 |
| 8/22/2019 | Purchase | 335 | $44.0000 |